# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TAMMY LYNN HOSEY,**

        **Plaintiff,**

        **v.**                                     **Civil Action No.: 2:11-cv-42**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**


## REPORT AND RECOMMENDATION
## THAT CLAIMANT'S MOTION FOR JUDGMENT ON THE PLEADINGS BE DENIED AND COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT BE GRANTED

### I. Introduction

A.    <u>Background</u>

Plaintiff, Tammy Lynn Hosey, ("Claimant"), filed her Complaint on May 19, 2011, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) of an adverse decision by Defendant, Commissioner of Social Security ("Commissioner").[1] Commissioner filed his Answer on July 19, 2011.[2] Because Claimant did not file a brief in support of her claims for relief within thirty days of the Defendant filing his answer and a copy of the administrative record, on October 13, 2011, this Court issued an Order to Show Cause why Claimant's claim should not be dismissed for failure to prosecute.[3] On October 20, 2011, Claimant filed a response to this Court's Order to Show Cause, and, good cause having been shown, on October 25, 2011, this court gave Claimant

---

[1] Dkt. No. 2.

[2] Dkt. No. 8.

[3] Dkt. No. 11.

an additional thirty days to file a brief in support of her claims.[4] On November 21, 2011, Claimant filed a Motion for Judgment on the Pleadings.[5] On January 23, 2012, Defendant filed a Motion for Summary Judgment.[6]

B.    The Pleadings

    1.    Claimant's Motion for Judgment on the Pleadings & Memorandum in Support

    2.    Commissioner's Motion for Summary Judgment & Memorandum in Support

C.    Recommendation

I recommend that:

    1.    Claimant's Motion for Judgment on the Pleadings be **<u>DENIED</u>** because the ALJ's factual error was harmless, he did not ignore medical evidence in making a determination Claimant does not have a disabling condition, he properly assigned weight to treating physician opinions, he properly assigned weight to a psychological report, and he made a proper credibility determination.

    2.    Commissioner's Motion for Summary Judgment be **<u>GRANTED</u>** for the same reasons set forth above.

## II.  Facts

A.    Procedural History

 Claimant filed an application for supplemental security income on November 7, 2007, alleging disability since January 1, 2007 due to back problems, diabetes, shoulder problems,

---

[4] Dkt. No. 13.

[5] Dkt. No. 15.

[6] Dkt. No. 20.

difficulty reading and writing, and high blood pressure. (Tr. 10, 129 ). The application was initially denied on January 24, 2008 and on reconsideration on April 25, 2008.  (Tr.10). Claimant requested a hearing before an ALJ and received a hearing on August 19, 2009 in Morgantown, West Virginia. (Tr. 10).

On November 25, 2009, the ALJ issued a decision adverse to Claimant finding that she was not under a disability within the meaning the Social Security Act from January 1, 2007 through the date of the decision, although he found that Plaintiff had certain severe impairments including degenerative disc disease and herniation of the lumbar spine (without nerve impingement), degenerative arthritis of the left shoulder, thoracic disc bulges, cervical disc disease with disc herniation, and straightening of the spine, type 2 diabetes mellitus, high blood pressure, morbid obesity, tobacco abuse, and borderline intellectual functioning. (Tr. 12).  The ALJ also found that she could perform light exertional work with a sit/stand option, that did not involve climbing ladders, ropes or scaffolds and involved other postural activities only occasionally, that did not involve any exposure to workplace hazards and any concentrated exposure to extreme cold, vibration or poor ventilation and airborne irritants, and that involved only simply, routine, repetitive tasks performed in a work environment free from fast pace production requirements. Claimant requested review by the Appeals Council but was denied. (Tr. 1-3). Claimant filed this action, which proceeded as set forth above, having exhausted her administrative remedies.

B.    Personal History

Claimant was born on August 10, 1971, and was thirty eight years old on the date of the August 19, 2009 hearing before the ALJ. (Tr. 21, 30). Claimant completed school through the

twelfth grade (Tr. 234). Claimant has prior work experience as a certified nursing assistant, a cashier, a grocery store manager, and as a teaching assistant. (Tr. 2D, 2E, 3E, 4E).

C.    <u>Medical History</u>

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that the Claimant is not under a disability and can still perform work in the national economy:

On February 22, 2007, Claimant had an ultrasound of her abdomen, but Dr. Dennis M. Burton reported that despite her history of abdominal pain and fatty liver, the abdominal CT was unremarkable. (Tr. 376). On February 27, 2007, Claimant reported to physician's assistant Debbie Cutlip at Webster County Memorial Hospital that she had not been taking her blood pressure medicine as prescribed. (Tr. 307). On April 10, 2007, Claimant returned to Webster Country Memorial Hospital but she did not bring new blood sugar test results and stated she thought the readings taken at the hospital were false. The physician's assistant noted that she is not concerned about her high blood pressure and sugar intake. (Tr. 304).

On May 3, 2007, Dr. Michael T. Hogan performed a thoracic study and found there was a slight curvature of Petitioner's spine with "a very slight loss of height of some thoracic vertebral bodies." (Tr. 373). On May 15, 2007, Claimant was examined by Dr. Short, who concluded she had free range of motion in her extremities and no neurological focal deficits. (Tr. 219). On June 20, 2007, Claimant reported that he back hurt occasionally, especially if she lifted heavy objects. (Tr. 304). On July 18, 2007, Claimant reported no problems, although the physician's assistant noted that she "doesn't really watch her diet" and "she often just eats and drinks anything." (Tr. 299). On August 6, 2007, Dr. Burton compared a chest image with a previous chest image and

found that the results were normal and stable. (Tr. 368). On August 9, 2007, Claimant returned to Webster County Memorial Hospital and rated her pain level as four out of ten. (Tr. 298). On August 23, 2007, a CT scan of Claimant's pelvis and abdomen again showed normal results. (Tr. 369). On September 5, 2007, Dr. Hogan reported Claimant had a normal left humerus. (Tr. 212).

On September 24, 2007, Claimant saw physician's assistant Cutlip with complaints of left shoulder pain. She noted Claimant "wasn't very compliant with her healthcare" and that she was not taking her blood pressure medicine. He also noted Claimant "just laughs when [she] tells her what she needs to do to keep healthy." (Tr. 296). An October 5, 2007 MRI showed Claimant had multilevel degenerative disc disease from L2 to S1 with loss of disc height and hydration at L5-S1. Dr. Halberto Cruz also noted Claimant had posterocentral disc protrusions at L3-L4 and L4-L-5 and diffuse posterior bulding at L5-S1. (Tr. 212). He noted that Claimant did not have a rotator cuff tear or bone contusions of the left shoulder, and evidenced only nonspecific arthritic changes at the joint. (Tr. 211).

On October 11, 2007, Claimant stated her pain level was at a nine. (Tr. 295). On October 17, 2007, Claimant began physical therapy for left shoulder bursitis and back pain. (Tr. 428). On October 22, 2007, physician's assistant Cutlip again noted that Claimant was not taking her prescribed Lautus medication and characterized her as "a very non-compliant patient." (Tr. 294). Notes from a November 6, 2007 physical therapy session indicate that it helped relieve her pain. (Tr. 426-28). On November 13, 2007, Claimant's physical therapist authorized a TENS unit for her. (Tr. 425). On November 15, 2007, Claimant returned to Webster County Memorial Hospital and stated that her blood sugars were better. On December 12, 2007, Dr. Fulvio Franyutti, reviewing Claimant's records at the request of the State Agency, reported that Claimant could

carry fifty pounds occasionally and twenty-five pounds frequently, that she could stand and/or walk about six hours in an eight hour workday, that she could sit about six hours in an eight hour workday, and that she could perform all postural activities at least occasionally and some frequently. (Tr. 226-27). On December 31, 2007, she stated her blood pressure was elevated because her children had been fighting that morning. (Tr. 292-93).

On January 5, 2008, psychologist Larry J. Legg stated Claimant had never received outpatient mental health services and had never been hospitalized for any psychiatric or psychological reasons. (Tr. 235). On January 14, 2008, Claimant told Dr. Legg that she has smoked three packs of cigarettes a day since age sixteen and that she drinks three cans of soda a day. She also told him that she cooks dinner, goes to her son's sports events, watches television, mops and sews. (Tr. 235). He administered IQ tests and reported her scores as being 77 (full scale), 87 (performance), and 71 (verbal). (Tr. 236-37). The doctor then diagnosed her with borderline intellectual functioning on Axis II. (Tr. 239). On January 23, 2008, Dr. Jim Capage noted in his psychiatric assessment that her activities of daily living, social functioning, and concentration, persistence or pace were not significantly reduced and that she retained the mental-emotional capacity to engage in substantial gainful activity. (Tr. 251-53). Dr. Bob Marinelli independently reviewed Plaintiff's records and agreed with Dr. Capage's assessment. (Tr. 275).

On January 21, 2008, Dr. James D. Weinstein examined Claimant and noted she had a positive straight leg raise at seventy degrees to the left and that she had tenderness. He noted her reflexes were intact and her strength weas good. Dr. Weinstein diagnosed her with disc degeneration at S-1 with no nerve root compression. He saw no need to operate and

recommended a left sacroiliac injection. (Tr. 273). On January 31, 2008, physician's assistant Cutlip again noted that Claimant was not taking her blood pressure medication nor was she following her dietary restrictions. (Tr. 291). On February 2, 2008, Claimant was given a CT injection in her sacroiliac joint without complications. (Tr. 255). On February 9, 2008 a chest and lung study by Dr. Burton showed normal results. On March 6, 2008, a lung study by Dr. Hogan also revealed normal results. (Tr. 354-55). Also on that date, Claimant admitted she had not taken her blood pressure medication. (Tr. 289). On March 20, 2008, Claimant stated she had not taken her medications for two weeks, and physician's assistant Cutlip noted she spent time with Claimant discussing the need to take care of her health and take her medications. (Tr. 288).

On April 21, 2008, Cindy Osborne, D.O., reviewing Claimant's records upon State Agency request, noted that she could lift and carry twenty pounds occasionally and ten pounds frequently, that she could stand and/or walk six hours in an eight hour workday, that she could sit about six hours in an eight hour workday, and that she could perform all postural activities occasionally other than climbing ladders, ropes and scaffolds. (Tr. 277-78). On May 5, 2008, Claimant returned to Webster County Memorial Hospital with an allergy problem and depression, and when her test results showed high blood sugar, she admitted she did not follow her diet or test her blood sugar as recommended. (Tr. 286). She was also prescribed Cymbalta for her depression. (Tr. 286). On May 19, 2008, Claimant again returned to Webster County Memorial Hospital with back pain, where she again admitted that her sugars were always high and that he was not following her recommended diet. (Tr. 285). On June 13, 2008, Claimant was diagnosed with a kidney stone (Tr. 506). On June 18, 2003, Claimant went to Webster County Memorial Hospital and was given medication for left flank pain. (Tr. 507-09). On June 23, 2007,

physician's assistant Cutlip again noted Claimant was not taking her medication and told her it was important to do so. (Tr. 496). On July 1, 2008, Claimant reported she had reduced her soda intake but that her back pain was so intense that she could not work. (Tr. 495).

On August 12, 2008, Claimant physician's assistant Cutlip again noted Claimant was not taking her blood pressure medicine, nor was she exercising or limiting her diet. She was not doing stretching or yoga for her back pain. (Tr. 494). On September 4, 2008, it was again noted that Claimant was not watching her diet and that she was "very noncompliant with her health." (Tr. 494). On October 24, 2008, Claimant reported that it was a good day for her back. (Tr. 490). On December 31, 2008, Claimant stated her insurance had changed, her stress had increased over the holidays, and that her back hurt her. (Tr. 489).

On July 11, 2009, Dr. Robert Smith diagnosed Claimant with degenerative change of the lower lumbar spine with severe disc space narrowing at the L5-S1 level. (Tr. 567). On July 21, 2009, Dr. Henry L. Setliff diagnosed her with posterior disc straightening and disc degeneration of the C4-5 and C5-6. He also diagnosed her with a small midline disc extrusion of the T7-8 and a small right of the midline disc bulge of the T8-9 with mild thoracic vertebral body lipping. With regard to the lumbar spine, Dr. Setliff noted that claimant had midline herniation and disc degeneration of the L3-4 and L4-5, posterior disc straightening and disc degeneration, L5-S-1, and osteoarthritic vertebral body lipping. (Tr. 570-71).

On January 10, 2010, Dr. Miele noted Claimant had "paraspinous muscle tenderness in the thoracic, lumbar, and cervical region. He stated that Claimant had axial mechanical pain in the cervical, thoracic and lumbar spine with no loss of function. (Tr. 583).

D.    <u>Testimonial Evidence</u>

Claimant testified that she has "constant pain in [her] back, and it starts from the shoulders and it goes down, and it goes down into [her] left leg, and [her] left leg goes numb." (Tr. 33). She also testified that the middle of her back sometimes goes numb and that she has constant pain in her lower back. (Tr. 33-34).

She testified that she has had Lidocaine injections to try and help the pain but she was allergic to it. (Tr. 34-35). She also testified that she has attempted physical therapy to help the pain but it did not take away her problems. (Tr. 35). She was prescribed a TENS unit and she testified that it eases her pain to some extent but not completely. (Tr. 35). She also testified that she takes several medications for her back pain, including Darvocet, Skelaxin, Flexeril, Tramadol, and Lidoderm. (Tr. 36).

Claimant also testified about the pain she has in her left shoulder. She testified that she had an MRI done of that shoulder and that she was diagnosed with bursitis. (Tr. 38). When asked how it affects her ability to use that arm, she testified that "[s]ome days its very hard, especially when it's raining where it aches so much." (Tr. 38).  Claimant testified as well about her left leg. She testified that she experiences weakness in that leg every day. (Tr. 38).

Claimant testified that she suffers from diabetes. She is taking Lantus and Humalog for her diabetes. In response to questions about non-compliance with her medications, she said that she has to make choices about whether to fill her prescriptions due to financial constraints. (Tr. 39-40). There are medications that she is not able to fill because she does not have the money to pay for them, although she did note that with co-pay, most of them cost fifteen dollars each. (Tr. 40, 47). She testified that she checks her blood sugar level three times a day or more if she is

sick, but that it is usually around 250. (Tr. 41). She testified that she tries to buy food that is healthy and on her diet but it is hard. (Tr. 41). They live in a rural area and the closest grocery store is seven miles away. (Tr. 49). She has recently been compliant with her diet, though, and has lost forty-four pounds. (Tr. 42).

Claimant testified about her depression as well. She said that she cries a lot, with crying spells either every day or every other day that last for thirty minutes. (Tr. 42). When asked whether her depression has affected her social relationships, she testified that she is a "halfway homebody" now. (Tr. 42). She testified that she talks to her friend either every night or every other night and that another friend tries to stop by once a week. (Tr. 42-43). She is not currently seeing a psychiatrist. (Tr. 50).

Claimant testified about her panic attacks. She testified that she has about twenty panic attacks every month. They last between thirty and forty-five minutes and they are usually at night.

E.    <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect her daily life.

Claimant is married and her husband is in the lumber business. (Tr. 44). She lives together with him and her two sons, who were fourteen and twelve years old at the time of the hearing. (Tr. 3E). She leaves the home twice a week to go to the store or to go to medical appointments. (Tr. 5F/6). She also cooks meals, does housework, drives, shops, sews, and uses the computer. Claimant is able capable of paying bills, counting change, handling a savings

account, and using a checkbook. Claimant's son and husband help her with daily tasks such as doing the laundry and the cooking. Claimant reported that she can no longer go hunting with her husband and kids, cannot mow the grass, and cannot sit or stand to do the dishes. (Tr. 56).

### III.  The Motions for Summary Judgment

A.    Contentions of the Parties

Claimant's brief alleges five instances of error on the ALJ's part: 1) that the ALJ improperly interpreted Claimant's medical record without the assistance or advice of a consultative physician, 2) that the ALJ ignored medical evidence in making a determination that Claimant does not have a disabling condition, 3) that the ALJ did not give proper weight to the treating physicians' records and reports, 4) that the ALJ failed to assign proper weight to a consultative psychological report, and 5) that the ALJ made an improper credibility assessment.

Commissioner contends the ALJ's decision is supported by substantial evidence and should therefore be affirmed.  Specifically, Commissioner responds that the ALJ properly weighed the opinions of Claimant's medical source providers and that the ALJ accommodated her borderline intellectual functioning by limiting her to simple, routine, repetitive tasks.

B.    The Standards.

1.    Summary Judgment.  Summary judgment is appropriate if  "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party

opposing the motion.  Matsushita Elec.  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

(1986).  However, "a party opposing a properly supported motion for summary judgment may

not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts

showing that there is a genuine issue for trial." Anderson v.  Liberty Lobby, Inc., 477 U.S. 242,

256 (1986).

      2.    Judicial Review.  Only a final determination of the Commissioner may receive

judicial review.  See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir.

1986).

C.    Discussion

1.    Whether the ALJ Made an Improper Credibility Assessment Based on a Factual Error

      First, Claimant argues that the ALJ made a negative credibility assessment based on his

mistaken interpretation of the record. The ALJ incorrectly stated in his decision that the lab

reports show Plaintiff tested positive for THC, when the record actually referred to her TSH

level, a measure of thyroid functioning. Based on this error, the ALJ stated "[the claimant's

apparent use of cannaboids does not enhance her credibility.]" (Tr. 18). However, this Court

finds that such an error was harmless. First, the ALJ put this statement in brackets, indicating

that the statement was merely supplementary or could have been omitted, because the main focus

of this section of the ALJ's analysis was Claimant's depressive or anxiety-related symptoms.

The ALJ also only stated that the THC did not enhance her credibility; he did not indicate that it

detracted from her credibility. Furthermore, however, to the extent that the ALJ did factor this

into his credibility determination, the error was harmless because it was but one small piece of

evidence on which the ALJ relied in assessing Claimant's credibility. See Conn v. Astrue, 2010

WL 3835555, at *4 (S.D. W.Va. Sept. 7, 2010). As will be discussed at greater length below, the ALJ based his credibility determination on other factors, including Claimant's non-compliance with health recommendations, her daily activities, medical opinions and diagnoses, and her prior work record and efforts to work. Accordingly, the ALJ's error was harmless so Claimant's claim is without merit.

2.      Whether the ALJ Erred by Ignoring Medical Evidence by Failing to Find that Claimant's Diagnosis of Stage Two Renal Failure is a Disabling Condition

Next, Claimant argues that the ALJ erred by failing to find that Claimant's diagnosis of Stage two renal failure is a disabling condition. Although the ALJ found that at no time was Claimant disabled, this decision is supported by substantial evidence. First, Claimant did not allege disability based on kidney failure nor did she identify any specific kidney-related limitations. Furthermore, the medical record that Claimant points to does not indicate that Claimant was in kidney failure, but that her kidney disease was in stage two. Stage two kidney disease is characterized by mildly reduced kidney function and some damage, and is treated by observation and control of blood pressure. Accordingly, the ALJ did not err in making a determination that Claimant was not disabled due to renal failure.

3.      Whether the ALJ Erred by Not Properly Assigning Weight to the Opinion of the Treating Physicians

The ALJ concluded Claimant has the residual functional capacity to perform light exertional work with a sit/stand option, that did not involve any climbing of ladders, ropes or scaffolds and involved other postural activities only occasionally, that did not involve any exposure to workplace hazards and any concentrated exposure to extreme cold, vibration or poor ventilation and airborne irritants, and that involved only simple, routine tasks performed in a

work environment free from fast pace production requirements. (Tr. 14). Claimant argues this was in error because the ALJ did not give proper weight to the opinions of her treating physicians.

As a general rule, the opinion of a treating physician will be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). See also Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990). When not entitled to controlling weight, the medical opinion of a treating physician is still entitled to deference and must be weighed according to the following five factors: 1) length of the treatment relationship and frequency of examinations, 2) nature and extent of the treatment relationship, 3) supportability, 4) consistency, and 5) specialization. 20 C.F.R. § 404.1527(d), 416.927(d). See also Heckler, 734 F.2d at 1015. When an ALJ does not give a treating source opinion controlling weight and determines that benefits should be denied, the decision must contain "specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the wight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2. See also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In this case, the record is fully and fairly developed on the issue of why the ALJ gave weight to the opinions of the doctors he credited. The ALJ stated that he had "valuated all medical opinions with regard to the claimant's condition," but that he chose to give greater

weight to some opinions. (Tr. 20). Specifically, the ALJ stated that he "accorded some weight to the December 2007 Physical Residual Functional Capacity Assessment of State Agency Medical Consultant, Fulvio Franyutti, M.D., in which he assess the claimant as having a 'medium' exertional capacity." (Tr. 20). However, the ALJ gave greater weight to the assessment of the State Agency Medical Consultant who found that Claimant had a light exertional capacity. (Tr. 20). Although Claimant argues that the ALJ did not give sufficient weight to the conclusions of Dr. Weinstein, the ALJ specifically considered the records from Dr. Weinstein and stated that his conclusions "are not indicative of a disabling condition which renders the claimant unable to engage in sustained employment." (Tr. 17). The ALJ stated he came to this conclusion in part because Claimant's non-compliance with medically advised treatment "contradicts any intractable disability." (Tr. 17). Claimant also argues that the ALJ did not give proper weight to the conclusions of Dr. Smith from Webster County Memorial Hospital. However, the ALJ specifically considered this evidence, but determined it should not be given significant weight. He stated: "[t]he undersigned further finds that medical studies completed approximately one month before the August 19, 2009 disability hearing are not indicative of a totally disabling condition," (Tr. 18), and the ALJ went on to state that he so found in part because "the claimant's daily activities are inconsistent with any disabling back abnormality. (Tr. 18).

Finally, Claimant argues that the post-hearing evidence in Dr. Miele's report shows the ALJ erred. Here, although the Appeals Council will review a case if it receives new and material evidence and the decision is contrary to the weight of all the evidence no in the record, among other reasons, the Appeals Council denied reviewand found the evidence did not provide a basis for overturning the ALJ's decision. When the Appeals Council receives additional evidence and

denies review, the issue left for the court is whether the ALJ's decision is supported by substantial evidence. See Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). In this case, the ALJ's decision is supported by substantial evidence. Claimant's long history of not complying with the treatment her medical providers recommended to her, including her failure to follow her dietary restrictions or take her prescribed medications, coupled with the daily activities she performs which are inconsistent with disability, and test results which contraindicate the presence of a totally disabling condition indicate that the ALJ's decision was supported by substantial evidence.

4.      Whether the ALJ Failed to Assign Proper Weight to a Consultative Psychological Report

Next, Claimant argues that the ALJ did not properly assign weight to a consultative psychological report prepared by examiner Larry Legg who concluded that Claimant has a verbal IQ score of 71. As a general rule, it is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "The role of the District Court is to address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the 'substantial evidence inquiry.'" Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The ALJ must explicitly indicate the weight given to the relevant evidence so that the Court can determine whether the findings are supported by substantial evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984). Here, the ALJ found Claimant did not meet the requirements of any listing within series 12.00. The ALJ found Claimant had only mild restriction in activities of daily living and in maintaining social functioning and that she had moderate restrictions with regard to her concentration, persistence or pace, but he did not find

that these were marked limitations. He also found that she had not experienced episodes of decomposition of extended duration. In making these findings, the ALJ stated he had considered medical and other evidence. He gave some weight to the assessments of Drs. Capage and Marinellei, but thought they had understated her restrictions, and pointed to the results of the diagnostic testing for support. However, he stated in conclusion that Claimant did not meet a listing, and cited her numerous semiskilled jobs, her driver's license, and her high school diploma, as evidence. This Court's role is not to weigh conflicting evidence or substitute its judgment for that of the ALJ. Here, here ALJ analyzed all the evidence, explained his reasons for crediting certain evidence, and supported his reasons. Accordingly, this Court must find that the ALJ did not commit error.

Petitioner also makes an argument that the ALJ should have brought in a consulting medical expert to determine whether Claimant meets the criteria under this Listing or under the musculoskeletal Listing. As a rule, although Claimant bears the burden of proof where the evidence in the record is equivocal, the ALJ has a duty to assist in developing the record. Sims v. Apfel, 530 U.S. 103, (2000). The ALJ has a duty to develop Claimant's complete medical history before making a determination of non-disability; to obtain additional information if reports from the medical sources contain ambiguities, and to order a consultative examination if unable to seek clarification from medical sources or if the information is not readily available from records. 20 C.F.R. § 404.1519(a)((b)(1). Remand is necessary where the ALJ fails to fulfill his duty to develop the medical record and the claimant is prejudiced as a result. Walker, 642 F.2d at 714. Prejudice results where the Commissioner's decision "might reasonably have been different had the evidence been before [him] when the decision was rendered." King v.

<u>Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979). In this case, however, the record was not ambiguous with regard to Claimant's mental or physical health status. There was sufficient evidence for the ALJ to find that Claimant is not disabled. Here, the ALJ had unambiguous and specific evidence in the record from treating and examining doctors, as well as reports from State Agency officials. With such a record, there was no need to elicit the testimony of consulting medical experts.

5.  <u>Whether the ALJ Improperly Considered Claimant's Testimony Regarding her Daily Activities in Making a Credibility Determination</u>

Finally, Claimant argues that the ALJ erred in considering Claimant's testimony regarding her daily activities in making a credibility determination. The Fourth Circuit stated the standard for evaluating a claimant's subjective complaints of pain in <u>Craig v. Chater</u>, 76 F.3d 585 (4th Cir. 1996). Under <u>Craig</u>, when a claimant alleges disability from subjective symptoms, he must first show the existence of a medically determinable impairment that could cause the symptoms alleged. <u>Id.</u> at 594. The ALJ must next "expressly consider" whether a claimant has such an impairment." <u>Id.</u> at 596. If the claimant makes this showing, the ALJ must consider all evidence, including the claimant's statements about his symptoms, in determining whether the claimant is disabled. <u>Craig</u>, 76 F.3d at 595. While the ALJ must consider the claimant's statements, he need not credit them to the extent they are inconsistent with the objective medical evidence or to the extent the underlying objective medical impairment could not reasonably be expected to cause the symptoms alleged. <u>Id.</u>

Additionally, the regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

1) The individual's daily activities; 2) The location, duration, frequency, and

intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c) and 416.929(c) (2010).

SSR 96-7p sets forth other factors that the adjudicator must also consider in addition to the objective medical evidence when assessing the credibility of an individual's statements. These factors include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. Furthermore, "[b]ecause [the ALJ has] the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (7th Cir. 1984) (citing Tyler v. Weinberger, 409 F. Supp. 776 (E.D. Va. 1976)). "Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." See Nelson v. Apfel, 131 F.3d 1228, 1237 (7th Cir. 1997). "We will reverse an ALJ's credibility determination only if the claimant can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (citing Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)).

Claimant's argument regarding the ALJ's credibility determination is without merit. Claimant contends that the decision is flawed in considering Claimant's activities of daily living.

Contrary to Claimant's assertion, the ALJ's decision illustrates a proper credibility assessment. Under  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), the ALJ must consider all evidence in determining whether Claimant is disabled. The ALJ did precisely that.  The ALJ explained his reasoning as to why she believed Claimant's allegations lacked veracity and the ALJ's consideration of Claimant's daily activities were but one factor considered.  Specifically, the ALJ discussed Claimant's medical data and found that the reports did not indicate the presence of a totally disabling condition, despite what Claimant argues. (Tr. 16). The ALJ also noted that Claimant's statements that she intended to apply for social security benefits, the fact that she had not worked since 2006, and the fact that she was between $10,000 and $15,000 in debt indicate that she might have a secondary motivation for overstating her symptoms. (Tr. 16, 19). The ALJ also noted he believed her refusal to treat her health concerns seriously undermined the credibility of her complaints regarding an alleged disabling condition, including her non-compliance with stretching and yoga to ease her back pain. (Tr. 19).  Accordingly, the Court finds the ALJ considered more than just Claimant's daily activities and reasonably found Claimant's allegations of completely debilitating limitations not entirely credible.  Therefore, this Court finds that the ALJ had more than a mere scintilla of evidence and appropriately discredited Claimant's subjective statements regarding his pain and symptoms.

For the above reasons, Claimant's assertions do not warrant relief.

## IV.  Recommendation

For the foregoing reasons, I recommend that:

1.    Claimant's Motion for Judgment on the Pleadings be DENIED.

2.    Commissioner's Motion for Summary Judgment be GRANTED.  ALJ's factual

error was harmless, he did not ignore medical evidence in making a determination Claimant does not have a disabling condition, he properly assigned weight to treating physician opinions, he properly assigned weight to a psychological report, and he made a proper credibility determination.

Any party who appears *pro se* and any counsel of record, as applicable, may, on or before **February 20, 2012**, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: February 6, 2012

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE